Peter D. STECHER, Plaintiff,

v.

Reuben ASKEW, Governor of the State of Florida, and Robert L. Shevin, Attorney General of the State of Florida, Defendants.

No. 74–193 CIV. T–K.

United States District Court,
M. D. Florida,
Tampa Division.

June 7, 1977.

Philip J. Padovano, Ruiz, Padovano & Schrader, St. Petersburg, Fla., Martin G. Weinberg, Oteri & Weinberg, Boston, Mass., for plaintiff.

Bernard S. McLendon, Asst. Atty. Gen., Dept. of Legal Affairs, Civ. Div., Tallahassee, Fla., for defendants.

Before RONEY, Circuit Judge, and KRENTZMAN and HODGES, District Judges.

RONEY, Circuit Judge:

Peter Stecher commenced this action to enjoin the enforcement of Fla.Stat.Ann. § 847.04 (1976), and have it declared unconstitutional. This statute, known as the Open Profanity Statute, prohibits the use of certain offensive language at various times and places.[1]

Plaintiff contends that the statute, as it has been construed by the Florida Supreme Court, is unconstitutionally vague and overbroad, and violates his constitutionally protected right of free speech. Finding the statute to be susceptible of further limiting constructions so as to bring it within the confines of valid state regulation of speech, we refuse to declare the statute void or enjoin its enforcement. Rather we dismiss the complaint, allowing any possible constitutional defects to be asserted as a defense to a prosecution under this statute, within the Florida state court system.

The defendants, the Governor and the Attorney General of the State of Florida, originally moved this Court to dismiss the complaint for lack of subject matter jurisdiction. They alleged that since the plaintiff was not in immediate danger of prosecution for violation of the contested provision, there was no live case or controversy

---

1. The statute provides as follows:

   Whoever, having arrived at the age of discretion, uses profane, vulgar and indecent language, in any public place; or upon the private premises of another, or so near thereto as to be heard by another, shall be guilty of a misdemeanor of the second degree, punishable as provided in § 775.082 or § 775.083; but no prosecution for any such offense shall be commenced after 20 days from the commission thereof.

for this Court to resolve. We rejected that contention, based on plaintiff's allegations that he had been threatened with arrest under this statute by a Florida law enforcement officer. For the purposes of that order we, of course, assumed the truthfulness of the allegations in the complaint. At that time we also narrowed the issue to be resolved. We noted that:

> While as a general rule a State Supreme Court may construe a statute which appears unconstitutional on its face in such a way as to render its application constitutional, *see, e. g., Wainwright v. Stone*, 414 U.S. 21 [94 S.Ct. 190, 38 L.Ed.2d 179] (1973), there may be cases in which such a construction, even though attempted, may be impossible. Under the facts alleged in the complaint, the plaintiff has standing to assert that this statute presents such a situation. The plaintiff has standing as to this issue: *to wit*, whether the statute is unconstitutional on its face and could not be rendered constitutional by any decision of the Florida Supreme Court.

█ In determining whether plaintiff has succeeded at this task, we "must take the statute as though it read precisely as the highest court of the State has interpreted it." *Minnesota ex rel. Pearson v. Probate Court*, 309 U.S. 270, 273, 60 S.Ct. 523, 525, 84 L.Ed. 744 (1940). Furthermore, "we lack jurisdiction authoritatively to construe state legislation." *United States v. Thirty-Seven Photographs*, 402 U.S. 363, 369, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971). Thus we examine the Open Profanity Law as it has been interpreted in *State v. Mayhew*, 288 So.2d 243 (Fla.1973). In that case the Florida Supreme Court stated that "the language sought to be prohibited by Section 847.04, Florida Statutes, F.S.A., is that which would necessarily incite a breach of the peace." *Id.* at 251. The narrow inquiry before us therefore is whether a state law prohibiting the use of "profane, vulgar and indecent language in any public place or upon the private premises of another, so as to necessarily incite a breach of the peace," is consistent with constitutional standards, or can be rendered consistent with them by further state court interpretation.

While the free exchange of thoughts and the freedom to articulate those thoughts is a fundamental pillar of our government, it has long been recognized that not all utterances are within the protected sphere of the First Amendment. *See e. g., Schenck v. United States*, 249 U.S. 47, 39 S.Ct. 247, 63 L.Ed. 470 (1919); *Whitney v. California*, 274 U.S. 357, 47 S.Ct. 641, 71 L.Ed. 1095 (1927); *Dejonge v. Oregon*, 299 U.S. 353, 57 S.Ct. 255, 81 L.Ed. 278 (1937). Most relevant to the problem is the decades old recognition that the state may regulate or even forbid the public utterance of words that are likely to lead to an imminent outbreak of violence. *Chaplinsky v. New Hampshire*, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). In *Chaplinsky*, the Supreme Court considered a state law which had been construed to prohibit "what men of common intelligence would understand would be words likely to cause an average addressee to fight." In concluding that such a prohibition could pass constitutional muster, the Court stated that "[w]e are unable to say that the limited scope of the statute as thus construed contravenes the Constitutional right of free expression. . . . A statute punishing verbal acts, carefully drawn so as not unduly to impair liberty of expression, is not too vague for a criminal law." *Id.* at 573–574, 62 S.Ct. at 770.

For the plaintiff to succeed in this Court, he must successfully demonstrate that no further interpretation could bring this statute within the confines of the tests set out in *Chaplinsky*. In subsequent proceedings under this statute, however, there is absolutely no obstacle to the Florida courts' further defining the words "necessarily incite a breach of the peace" which were incorporated into this statute by *State v. Mayhew*, 288 So.2d 243 (Fla.1973), as meaning "words likely to cause an average addressee to fight." Such construction would save the statute, and the plaintiff cannot demonstrate that the Florida courts will not so construe it.

Plaintiff argues that *Gooding v. Wilson*, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972), supports his contention that the interpretation of the statute in "breach of peace" terms does not save it from unconstitutionality. In *Gooding*, a Georgia statute used such words and made it a misdemeanor to use "opprobrious words or abusive language tending to cause a breach of the peace." The Supreme Court held the statute vague and overbroad. In so doing the Court reaffirmed its conclusion that the states did have power to regulate or prohibit the use of "fighting words" consistently with the constitutional demands of free speech. The key distinction between *Gooding* and the case before this Court is that in *Gooding* the phrase "tending to cause a breach of the peace" had already been authoritatively construed by the Georgia courts, and that construction was broader and more inclusive than the "fighting words" which form the legitimate sphere of speech which may be proscribed. As the *Gooding* Court put it, "Georgia appellate decisions have construed [this statute] to apply to utterances, that . . . are not 'fighting' words as *Chaplinsky* defines them." *Id.* at 525, 92 S.Ct. at 1107. As the Supreme Court pointed out, under the Georgia judicial construction of the statute, words addressed to one who was incapable of responding physically at the time of the utterance, but who might bear the resentment until such time in the future as he could respond physically were considered words which had a tendency to breach the peace. This Georgia interpretation of the statute rendered it far broader than the limited "fighting words" statutes sanctioned in *Chaplinsky*.

Unlike the Georgia situation where the "breach of the peace" language had been part of the statute for over half a century and had been construed on numerous occasions to condemn speech outside the ambit of "fighting words," in Florida the gloss which injected the "breach of the peace" concept into the Open Profanity Statute dates only from the one decision in *State v. Mayhew*, 288 So.2d 243 (Fla.1973). That the Florida Supreme Court intends to interpret the statute in *Chaplinsky* terms, rather than as the Georgia courts did in *Gooding* is best revealed by the careful opinion of Justice B. K. Roberts in *Mayhew*. Justice Roberts discussed at length the permissible construction in *Chaplinsky* and the impermissible construction in *Gooding* and placed Florida squarely in the position of construing the statute in such a way as to make it constitutional.

That a state court has the authority to choose between a constitutional or unconstitutional construction of a statute is demonstrated by *Wainwright v. Stone*, 414 U.S. 21, 94 S.Ct. 190, 38 L.Ed.2d 179 (1973). In *Stone*, the United States Supreme Court held it permissible for the Florida Supreme Court to refuse prospectively to construe a statute in such a way as to bring it within constitutional limits of vagueness, and to depart from its longstanding construction which had given the statute the definitiveness required for constitutional validity. That which was certain became vague through judicial decision.

That this Court must allow the Florida courts the opportunity to invoke a limiting construction is clear. In *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975), the Supreme Court, in disposing of a challenge to a city ordinance regulating the types of movies that could be shown by a drive-in theatre whose screen was visible from the public streets, made the following observation:

This Court has long recognized that a demonstrably overbroad statute or ordinance may deter the legitimate exercise of First Amendment rights. Nonetheless, when considering a facial challenge it is necessary to proceed with caution and restraint, as invalidation may result in unnecessary interference with a state regulatory program. In accommodating these competing interests the Court has held that a state statute should not be deemed facially invalid unless it is not readily subject to a narrowing construction by the state courts, *see Dombrowski v. Pfister*, 380 U.S. 479, 497, 85 S.Ct. 1116, 1126, 14 L.Ed.2d 22 (1965) . . . .

422 U.S. at 216, 95 S.Ct. at 2276. In *Time, Inc. v. Hill*, 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967), the Court refused to declare a New York privacy statute invalid on its face, noting that the New York courts had "been assiduous in construing the statute to avoid invasion of the constitutional protections of speech and press. We, therefore, confidently expect that the New York courts will apply the statute consistently with the constitutional command." *Id.* at 397, 87 S.Ct. at 547.

▪ In passing on a request for injunctive relief, a three-judge federal district court exercises equitable authority. So long as the statute under consideration can be interpreted consistently with the First Amendment, there is no prospect of injury to plaintiff that calls for the use of injunctive powers. The statute before us is "readily subject to a narrowing construction." Plaintiff is free to urge that construction on the Florida courts at any point during a prosecution under the Open Profanity Law. The complaint is dismissed and final judgment shall be entered for the defendants.